**Karen K. GLENN, Plaintiff–Appellant,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant–Appellee.**

**No. 92–5150.**

United States Court of Appeals, Tenth Circuit.

April 8, 1994.

984

Paul F. McTighe, Jr., Tulsa, OK, for plaintiff-appellant.

Tony M. Graham, U.S. Atty., Gayla Fuller, Chief Counsel, Region VI; and Christopher Carillo, Asst. Regional Counsel, Office of the General Counsel, U.S. Dept. of Health and Human Services, Dallas, TX, for defendant-appellee.

Before HOLLOWAY, BARRETT, and McKAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Claimant Karen K. Glenn appeals an order of the district court, affirming the decision of the Secretary of Health and Human Services denying her request for continued social security benefits. On appeal, claimant's main arguments are that (1) the decision of the Secretary was not supported by substantial evidence; (2) the Administrative Law Judge (ALJ) erred in failing to obtain the testimony of a vocational expert; and (3) the ALJ violated claimant's right to due process by failing to subpoena the consulting psychiatrist who examined claimant at the government's request.

I

Claimant was 42 years old at the time she was initially awarded social security benefits on September 30, 1986. Claimant was diagnosed as suffering from chronic residual schizophrenia and borderline intellectual functioning of the severity required to meet the listings in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03. On February 7, 1989, the Social Security Administration notified claimant that she was no longer considered disabled, and her benefits were terminated. Claimant requested reconsideration of the termination decision, which was denied. Claimant then requested and received a hearing before an ALJ, who determined that claimant was no longer disabled within the meaning of the Social Security Act and that she was able to return to her past relevant work as a spool trimmer in a fishing equipment manufacturing company. The Appeals Council denied claimant's request for review and, accordingly, the ALJ's decision became the final decision of the Secretary. Claimant petitioned for review and the district court affirmed.

Our review of the Secretary's decision is limited to determining whether the decision is supported by substantial evidence and "whether the Secretary applied correct legal standards." *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir.1991). "We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800–01 (10th Cir.1991).

We turn now to the record evidence and the findings of the ALJ which are challenged in this appeal.

## II

### A.

In 1985, after being observed at her job as withdrawn and distracted, claimant was admitted to St. John Medical Center in Tulsa. An examination disclosed that claimant's personal hygiene was badly neglected and she appeared unresponsive. She was successfully treated with Mellaril and released four days later.

Claimant was an inpatient at the Tulsa Psychiatric Clinic from April 17 to May 13, 1985. Following release, she continued to be treated at the clinic with Prolixin injections and had monthly therapy sessions. A consultative examination on May 20, 1985, indicated that claimant had an average IQ, but was suffering impaired judgment and concentration. During this period of time, claimant's caseworker described her living conditions as unclean and deplorable.

At the time claimant was determined to be disabled, she was unresponsive, reclusive, unable to concentrate, unable to see to her own personal needs, and she was articulating suicidal ideations. She was also unable to carry out instructions to perform work-related activities. Claimant has a ninth grade education.

In contrast, at the time of the termination hearing on January 5, 1990, claimant held a job as a housekeeper at Mental Healthcare Services, Inc., working 20 hours a week. In addition, she had for the previous two weeks worked two hours a day, six days a week as a housekeeper for her neighbor. She also testified that she had worked for one month, between October and November 1989, as a provider. The record indicates that claimant had been seeking full time work. Although the ALJ concluded that this was evidence that claimant was engaged in substantial gainful activity, he did not decide the case at this point due to claimant's allegations that the work she was doing was sheltered and therefore not substantial gainful activity.

At the hearing, claimant appeared neat, well-groomed, and alert. The ALJ determined that she was no longer quite as isolated, she visited with friends, although infrequently, and maintained a good relationship with a boyfriend. Her speech was logical and appropriate, and she did not appear depressed. Claimant stated that she does her own cleaning, cooking, and shopping. She testified that she has a driver's license and can drive, although she did not have a car at that time. She claims that she rides the bus and walks when she needs transportation. Therefore, the ALJ determined that claimant's impairment had improved, and her medical condition no longer met or equaled an impairment listed in Appendix 1.

In a consultative examination on November 3, 1988, Dr. Thomas A. Goodman, a psychiatrist, noted that during hospitalizations in 1984 and 1985, there was no confirmed evidence of "auditory hallucinations, looseness of her associations, flatness of her affect or other definitive signs of schizophrenia." II R. 234. Dr. Goodman reported that he could not confirm findings of mental retardation nor of a schizophrenic reaction which had been diagnosed at the Tulsa Psychiatric Center. "Claimant seems to regress at times and possibly become depressed." *Id.* at 235. The doctor was "not sure what type of episodes these are," except at the time of his examination on November 3, 1988, the episodes seemed to be in remission on very small doses of Prolixin. *Id.*

Dr. Goodman recommended that claimant remain in psychiatric care and monitoring at the Tulsa Psychiatric Center with Dr. Petculescu, claimant's treating physician. Despite a moderate speech impediment, claimant was friendly, was able to follow instructions, was oriented, could think clearly, and was able to do at least moderately complicated computations. It was Dr. Goodman's impression that:

[A]lthough she could probably not return to her previous work as a machine operator, [he thought] she can do simple tasks that did not require a great deal of interaction with the public or strangers or a great deal of concentrated intellectual effort. She is obviously able to do housework and

could possibly do waitress work or small activities. [He thought] she would feel better, it would help her self-esteem if she could return to work on a more regular basis.`.... [In his] opinion she is capable of managing her own funds.

*Id.*

The record indicates that claimant attended therapy sessions at Mental Healthcare Services, Inc. from November 1988, to April 1989. Mental Healthcare Services' notes indicate that claimant was stable and "doing fine." *Id.* at 226. She also had indicated to Mental Healthcare Services that she felt able to hold a job and requested help in locating one. *Id.* at 224. The notes do not indicate that claimant ever complained of any adverse side effects from her medication.

Claimant contends that she cannot return to full time employment because she tires easily. She says that Dr. Petculescu, fearing the possibility of decompensation, suggested she limit her extra housekeeping job to two nights a week in order to avoid stress. She testified that she obtained a job cleaning motel rooms, and had to quit because she became overly tired, but she presented no evidence of decompensation. Claimant did testify that she "forgot things" such as placing a pan in the sink to soak and forgetting to wash it and forgetting to keep the journal her attorney suggested she keep.

### B.

This appeal must be considered under the provisions of the Social Security Disability Benefits Reform Act of 1984, Pub.L. 98–460, 98 Stat. 1794, *et seq.*, 42 U.S.C. § 423(f), and the regulations implementing the statute. *See* 20 C.F.R. § 404.1594 (1988). In connection with possible termination of benefits, medical improvement "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s)...." 20 C.F.R. § 404.1594(b)(1) (1988) (citing 20 C.F.R. § 404.1528). A medical improvement is only related to a claimant's ability to work "if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision *and* an increase in your functional capacity to

do basic work activities...." 20 C.F.R. § 404.1594(b)(3) (1988) (emphasis in original).

In connection with the statute and pertinent regulations, it is important to note the critical findings of the ALJ here concerning the claimant's alleged improvement. In his written decision, the ALJ found there has been medical improvement by claimant related to her ability to perform work-related activities and that she is capable of performing her past relevant work; therefore, he found that she no longer continues to be under a disability within the meaning of the Act. II R. 19. In his underlying findings, the ALJ said the claimant was found to be disabled beginning July 12, 1985, and that she had not engaged in substantial gainful activity since that date. The medical evidence establishes that she currently has schizophrenia. She does not, however, have an impairment or combination of impairments which meet or equal the severity of an impairment listed in Subpt. P, App. 1, Regulations No. 4. *Id.*

The ALJ further found that the medical evidence establishes that there has been improvement in the claimant's medical impairments since July 12, 1985. The improvement is related to her ability to work. The medical evidence establishes that the claimant currently has an impairment or combination of impairments which is severe. The ALJ found, however, that the claimant's allegations of stress are not credible to the extent alleged and are inconsistent with the objective medical evidence. Since February 1989, the claimant was found to have had the residual functional capacity to perform the exertional and nonexertional requirements of work.

In Finding No. 10, the ALJ found that the claimant's past relevant work as a spool trimmer did not require the performance of the work-related activities precluded by the above limitations. The ALJ determined in Finding No. 11 that the claimant's impairment does not prevent her from performing her past relevant work. The ALJ concluded that the claimant's disability ceased in February 1989. *Id.* at 19–20.

### C.

■ In her challenge to the adverse findings of the ALJ, the claimant centers her attack on Findings No. 10 and 11, noted above, namely, that her past relevant work as a spool trimmer did not require performance of work-related activities precluded by her limitations, and that her impairment does not prevent her from performing her past relevant work. Claimant vigorously argues that these findings are not based on substantial evidence and should be reversed, and that the case should be remanded for a supplemental administrative hearing. Appellant's Brief at 5–10. We must disagree.

■ In judging the sufficiency of the record evidence to support the findings, we note that in the regulations implementing the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423(f), the Secretary has recognized that before termination of benefits, the Secretary has the burden of showing that a claimant has the ability to engage in substantial gainful activity.[1] *See, e.g.,* 20 C.F.R. § 404.1594(b)(5) (1988) ("In most instances, *we must show* that you are able to engage in substantial gainful activity before

your benefits are stopped.") (emphasis added); 20 C.F.R. § 404.1594(c)(3)(i) (1988) ("If there has been medical improvement to the degree that the requirement of the listing section is no longer met or equaled, then the medical improvement is related to your ability to work. *We must, of course, also establish* that you can currently engage in gainful activity before finding that your disability has ended.") (emphasis added); 20 C.F.R. 404.1594(d) (1988) (If one of the exceptions to medical improvement applies, *"we must also show that,* taking all your current impairment(s) into account, not just those that existed at the time of our most recent favorable medical decision, you are now able to engage in substantial gainful activity before your disability can be found to have ended.") (emphasis added).[2]

We are convinced that the findings of the ALJ that claimant has undergone medical improvement and is able to perform her past relevant work are supported by substantial evidence. While Dr. Goodman said that "she could probably not return to her previous work," II R. 235, there is considerable contrary evidence.[3] While there is evidence con-

---

1. In this connection, the Secretary cites, *inter alia, Potter v. Secretary of Health & Human Servs.,* 905 F.2d 1346, 1349 (10th Cir.1990), *Reyes v. Bowen,* 845 F.2d 242, 243 (10th Cir. 1988), and *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984), for the proposition that claimant has the burden of proving that she cannot perform her past relevant work. Brief of Appellee at 13. In addition to this proposition being inconsistent with the burdens assumed by the Secretary in her own regulations, *see supra,* the cases cited by the Secretary are not persuasive because they concern initial benefit determinations, not termination of benefits decisions.

2. We note that the Fifth Circuit has stated that "the ultimate burden of proof lies with the Secretary in termination proceedings." *Griego v. Sullivan,* 940 F.2d 942, 944 (5th Cir.1991); *see id.* at n. 1 (a shifting burden "could run contrary to § 423(f), as the statute clearly places the ultimate burden of proof on the Secretary"). *Cf. Polaski v. Heckler,* 751 F.2d 943, 945–46 (8th Cir.1984), *vacated and remanded on other grounds sub nom., Bowen v. Polaski,* 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986).

3. This evidence includes the fact that Dr. Goodman also stated in his report that:
   I think she can do simple tasks that did [sic] not require a great deal of interaction with the public or strangers or a great deal of concen-

trated intellectual effort. She is obviously able to do housework and could possibly do waitress work or similar activities. I think she would feel better, it would help her self-esteem if she could return to work on a more regular basis.
   II R. 235.
   Additionally, the "progress notes" from Glenn's treatment facility, Mental Healthcare Services, Inc., indicate, *inter alia,* that: (1) Glenn "is able to comprehend and carry out simple instructions with close supervision," *id.* at 218; (2) Glenn worked 25.5 hours per week as a housekeeper in July of 1989, *id.* at 243; (3) on February 2, 1989, she stated that she was working 20 hours a week as a housekeeper, *id.* at 225; (4) Glenn's treating psychiatrist opined in April of 1989—2 months after Glenn's disability was deemed to have ceased—that Glenn was capable of performing a 40 hour per week job, *id.* at 250; and (5) on April 27, 1989, she stated that she would like to get a full time job and that she was advised to go from 20 hours a week to 32 hours per week for 1 to 3 weeks and that "if she could do [that]" she should increase her number of hours per week to 40, *id.* Glenn also indicated to the ALJ at her termination hearing that she had worked from September 1988 to July 1989 as a housekeeper for Mental Healthcare Services, Inc. *Id.* at 35.
   We noted in text that the consulting physician said that the claimant's episodes of mental diffi-

tradictory of the ALJ's findings,[4] it is not this court's task to reevaluate the factual evidence. We must affirm if, considering the record as a whole, including whatever fairly detracts from the findings, there is sufficient evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). The Secretary's decision in this case meets this standard.

### III

■ Finally, claimant alleges two procedural errors. First, claimant contends that the ALJ erred in failing to obtain the testimony of a vocational expert. We disagree. Only after a determination that claimant suffers from an impairment or combination of impairments severe enough to preclude her from returning to her prior work activity is the ALJ under obligation to make an inquiry to determine what other employment is available to the claimant in the national economy. *See Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 776 (10th Cir.1990); *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984). Due to the ALJ's determination that claimant could return to her former work activities, he was under no obligation to seek additional information from a vocational expert.

■ Lastly, claimant contends she was denied due process by the ALJ's failure to subpoena the consulting physician, Dr. Goodman, for cross-examination. We disagree.

The regulations provide that "[w]hen it is reasonably necessary for the full presentation of a case, an Administrative Law Judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses...." 20 C.F.R. § 404.950(d)(1) (1988). Here, on December 29, 1989, counsel for claimant sent a letter to the ALJ objecting to Dr. Goodman's report because claimant's consultative examination was not performed by her treating physician.[5] II R. 251. In addition, counsel requested that Dr. Goodman be subpoenaed, stating: "I request the right to cross-exam[ine] this witness. The testimony that I intend to elicit from the witness will be for impeachment of this witness." *Id.*

In view of the full presentation of the case already developed in the record, we hold that it was not an abuse of discretion for the ALJ to decline to issue the subpoena on the scant showing made by claimant's counsel.

**AFFIRMED.**

---

culty seemed to be in remission on very small doses of Prolixin. Report of Examination of November 3, 1988, *id.* at 235. The ALJ said this impression of the consulting physician was persuasive to him. *Id.* at 18.

The claimant stated that her job as a spool trimmer daily involved two hours of walking, six hours of standing, no sitting, but there was frequent bending and reaching each day, and there was use of machines and tools, but no technical knowledge or skills were required. *Id.* at 111–112. The Magistrate Judge's opinion, p. 9, n. 5, stated that the Dictionary of Occupational Titles describes the job of a fishing line winding machine operator as unskilled.

4. This contradictory evidence includes, *inter alia,* the following: (1) Dr. Goodman stated that Glenn "could probably not return to her previous work as a machine operator....", II R. 235; (2) Glenn's November 3, 1988 progress notes from Mental Healthcare Services, Inc. state that:

Client is able to comprehend and carry out simple instructions with close supervision.

She has started working on a part-time basis. She was working 4 nights per week, 4 hours per night. Her physician has requested that she cut back to 2 nights per week, as she becomes overly tired, and there is a possibility of decompensation when she is under stress. Work seems satisfactory, but she is slow.

*Id.* at 218–19; (3) Glenn's August 1, 1989 progress notes from Mental Healthcare Services, Inc. indicate that Glenn quit her job as a motel housekeeper because it was too stressful, II R. 242; and (4) citing as examples the fact that she "put a pan to soak and forgot to wash it", and the fact that she did not follow her attorney's instructions "to do a diary", Glenn stated to the ALJ that stress makes her forgetful, *id.* at 40–41, 48.

5. In his decision, the ALJ explained that claimant's treating physician, Dr. Petculescu, had been contacted regarding a consultative examination, and she responded that she was unable to perform this service for her patients due to time constraints. *Id.* at 18.