**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 14 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOHN M. RICE,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

      Defendant-Appellee.

No. 99-1422
(D.C. No. 98-M-2177)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff seeks review of the district court's order upholding the Commissioner's determination to deny him social security disability benefits. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we affirm.

Procedural Background

Plaintiff was born in 1950 and has an eighth grade education. He enlisted in the United States Marine Corps at age eighteen and served for two years, including one year in combat duty in Vietnam. He sustained a lung injury during training for which he was awarded a ten percent service-connected disability in 1970. His work history includes jobs as a siding applicator, truck driver, field superintendent, maintenance superintendent, and cat operator. Appellant's App., Vol. I at 252. He filed for benefits in 1992, claiming disability as of May 15, 1990, primarily due to back pain from herniated disks. He was last insured as of June 30, 1992. Following an initial hearing before an administrative law judge (ALJ), he was found not disabled at step five. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (outlining five-step sequential process for determining disability). The Appeals Council remanded the matter to a different ALJ for further consideration of the evidence.

Following a second hearing, another ALJ found at step four that plaintiff was not disabled because he could perform his past relevant work as a tractor

operator.  See Appellant's App., Vol. I at 201-02.  After plaintiff's appeal was denied by the Appeals Council, he filed suit in federal district court.  The Commissioner filed an unopposed motion seeking a remand under 42 U.S.C. § 405(g) (sentence four), to "(1) fully evaluate plaintiff's mental condition during the relevant period; (2) arrange for medical expert testimony to clarify the medical issues; and (3) obtain vocational expert evidence if appropriate." See Appellant's App.,  Vol. III at  722.  The district court granted the motion. See id. at 724.

After a third hearing, the ALJ determined that plaintiff was not disabled prior to June 30, 1992, by "non-substance abuse related impairments."  The ALJ further determined that plaintiff "is disabled because of a continuous period of alcohol abuse."  See id. at 694.  Because the ALJ found the alcohol abuse was "a contributing factor material to the disability determination," he determined that plaintiff was not entitled to benefits.    Id.; 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled . . . if alcoholism . . . would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.").  Plaintiff again sought review in the district court, which affirmed the denial of benefits, and he appeals.

On appeal, plaintiff raised the following issues:  (1) the ALJ's finding that alcohol abuse was a contributing factor material to the disability determination is

not supported by substantive evidence; (2) the ALJ failed to comply with the district court's remand order of August 7, 1997; (3) the ALJ did not properly consider plaintiff's limitations and complaints of pain from his low back injury; (4) the ALJ did not properly consider the opinions of the treating, examining and consulting doctors; and (5) the matter should be remanded or reversed to complete the record.

Medical History

Plaintiff's medical records concerning his back problems indicate that Dr. Welch performed a lumbar microdisectomy at L4-5 and L5-S1 on him in July of 1980. See Appellant's App., Vol. II at 282. Although he did well after surgery, he developed some recurrent pain in his right lower extremity (thought to be primarily muscle tightness), for which physical therapy, heat and massage were prescribed. See id. at 287. A lumbar myelogram revealed recurrent disk herniation, for which further surgery was recommended, see id. at 289, but the surgery was not performed because plaintiff had improved considerably by January of 1981. See id. at 294. He was told both to avoid heavy lifting and to limit his lifting to twenty pounds. See id. at 292-94.

Plaintiff experienced recurrent lumbar radiculopathy in 1983, for which Dr. Welch prescribed two weeks of bed rest and no work. See id. at 296. Plaintiff reported improvement after a couple months and was released to return

to work with the admonition that he avoid heavy lifting, prolonged bending, and twisting motions of the back. See id. at 297. He did not return for medical treatment until 1988 when he was diagnosed with likely recurrent facetal disease or possibly recurrent lumbar radiculopathy, with some degenerative changes and abnormal disks at L4-5 and L5-S1. Bed rest and physical therapy were prescribed, and plaintiff was given prescriptions for Motrin and Flexeril, see id. at 298-99. His last contact with Dr. Welch was in 1992, by letter; the doctor recommended plaintiff seek further treatment in Michigan where plaintiff was then living. See id. at 300. There is no indication plaintiff sought medical treatment at the time of his alleged disability onset date of May 15, 1990.

Plaintiff was treated in November of 1990 for acute chest pain (to rule out myocardial infarction) and ultimately diagnosed with a "[a]cute chest pain, probable hiatus hernia and acute esophagitis." See id. at 444. Plaintiff was discharged with the doctor's notation that if plaintiff continued heavy smoking and drinking, "I'm sure he will have recurrences of pain." Id. He was seen at a Veterans Administration (VA) Hospital in March of 1991 for alcohol abuse, acidosis, and dehydration. See id. at 491.

In March of 1992, plaintiff was treated by Dr. Failer for degenerative joint disease of the lumbosacral spine with a vacuum disk phenomenon at L5-S1 and L4-5, a bulging disk prominent especially at L4-5, but no herniation of the disk.

-5-

See id. at 485. He was prescribed Darvocet and Toradol in April, and restricted from lifting, carrying, standing, and walking, pending further evaluation. See id. at 477, 479.

In July (past the June 30 date he was last insured), plaintiff was again seen at the VA hospital for chronic back pain, shortness of breath, anxiety, difficulty sleeping, and alcohol abuse. See id. at 303. He was noted to have a mild airway obstruction (and smoking three to four packs of cigarettes daily) but with no evidence of cardiopulmonary abnormality. See id. at 303-04, 306. Disk degeneration was found.

A social work service report of July 14, 1992, reported multiple failed marriages, financial difficulties, and the service-connected lung injury, with the interviewer noting that plaintiff denied having a substance abuse problem. See id. at 309-12. A second evaluation by a VA staff psychiatrist on August 10 noted that all plaintiff wanted was pain pills and nerve pills. See id. at 313. He expressed anger at the medication and exercises prescribed for him and resentment that his doctors would not give him "real pain pills." See id. He acknowledged heavy smoking, but claimed to have ceased drinking his one to two-fifths of liquor daily and was presently drinking one to eight beers per day. See id. at 314. When offered a prescription for a nonhabit forming anti-depressant with some sedative qualities, plaintiff discarded the prescription

when advised of the need for monitoring his progress. See id. Although he had experienced some intrusive memories of Vietnam for several years after serving there, he did not describe flashbacks or continued intrusive thoughts. See id. at 313. The diagnosis at this time was alcohol and tobacco dependence. See id. at 314.

Dr. Friedman, a Social Security Administration consultant, examined plaintiff in September of 1992 and found full range of motion of the major joints of the lower extremities, with some limits to the lumbosacral spinal motion. Seated straight leg raising was pain free and full to ninety degrees on the right but positive for midline low back pain on the left at seventy degrees. Plaintiff was able to walk on both heels and toes, squat and arise from a deep knee bend. Plaintiff's gait was observed to be essentially normal, and he had no difficulty with undressing or getting on and off the examining table. See id. at 316-17.

Plaintiff was further evaluated for drinking problems in January and March of 1993, see id. at 324-27, with no change in his back condition noted. The examiner also noted that plaintiff could care for his needs and that he could shop with some help, drive a car, watch TV, visit with his family, and attend church. See id. at 327. Plaintiff claimed he had not been drinking since July of 1992. See id. at 324, 327. In April of 1993, however, he was reevaluated for the "waxing and waning, recurrent pain in his lower left extremity with minimal back pain."

See id. at 409. He admitted the pain was "the best that it [had] been in the past two years." Id. He also stated that he had been an alcoholic until the recent past. See id. In May of 1993 he returned "with a set of spine films [demonstrating] closed down disk space at L4-5 and L5-S1" and "[n]o obvious spondylolsthesis." On examination, plaintiff demonstrated full strength throughout the lower extremities with a positive straight leg raise on the left. See id. at 407. In June, nerve conduction studies of the right and left lower extremities showed normal amplitudes and latencies of bilateral peroneal motion responses, with electrodiagnostic evidence of chronic bilateral S1 radiculopathies, worse on the right. See id. at 405.

He was taken to a VA hospital in August of 1993, apparently intoxicated and quite belligerent. See id. at 401-02. In November, his prior evaluation of thirty percent disability for bronchitis was continued, but an additional ten percent service-connected disability for post traumatic stress disorder (PTSD) was established. See id. at 473-74.

In February of 1994, he was again admitted to a VA hospital complaining of fever, chest pains, nausea, vomiting, and coughing. Admission notes reflect that he was smoking three packs of cigarettes a day and taking no medications. See id. at 375. He was referred for a surgical consultation, see id. at 379, but expressed no interest at the time. See id. at 380. He was successfully detoxified,

see id. Vol. II at 361, and released eight days later with multiple diagnoses, including acute and chronic alcoholism, duodenal diverticulum, bronchitis, nicotine addiction, hypertension secondary to alcoholism (currently resolved by abstinence), history of past disk surgeries, and possible recent minor upper gastrointestinal bleeding, presumably secondary to alcohol gastritis.      See id.

In July, he was evaluated for residual or recurrent disk herniation.      See id. at 397.  He was diagnosed with failed back syndrome with no operative lesion, for which he was prescribed nonsurgical treatment, including physical therapy, use of a TENS unit and acupuncture.     See id. at 399.

In June of 1995, he was again hospitalized for fatigue, diarrhea, nausea, dyspnea, and possible incomplete resolution of pneumonia.  His doctor noted the back was supple and without tenderness.  Plaintiff did not report being on any medications.  He was "further[ ] advised to cease smoking and consumption of alcohol," which he promised to do.     See id. at 457-60.  He returned in August, apparently at the behest of his mother and sister, who were concerned about his drinking.   See id. at 469.  He was also still smoking three packs of cigarettes per day.  See id.

From April to July of 1996, plaintiff spent approximately three months at a VA medical center undergoing treatment for depression, PTSD, and alcohol

dependence.  He was also noted to have chronic obstructive pulmonary disease and degenerative disk disease.     See id. at 498-500.

He was readmitted a week after his initial discharge with symptoms of depression, anxiety, coping difficulties, and insomnia,     see id. at 501, and remained at the hospital until October of 1996.     See id.  Although he complained of problems sleeping, nurses' notes from at least two occasions indicate he had been asleep at all bed checks and was likely sleeping both more and better than he realized.   See id. at 522, 532, 541.  He attended depression group sessions on a frequent basis as well as dual diagnostic groups and the PTSD program.  His clinical psychologist reported that he was having PTSD nightmares,     see id. at 578, and that she thought him to be unemployable due to the PTSD symptoms, back problems, and his age.    See id. at 584.  Following his discharge, he apparently continued therapy as an outpatient, but returned to heavy drinking in December. See id., Vol. III at 786-87.

Plaintiff was readmitted on two occasions in May of 1997, based on "alcohol intoxication and suicidal ideations,"     see id. at 762,  and a psychiatric admission for substance abuse treatment.     See id. at 751.  Notations at his second discharge reflected continuous alcohol dependence, nicotine addition, PTSD, and depression.   See id.

Discussion

We examine the record as a whole to determine whether the
Commissioner's decision is supported by substantial evidence and whether correct
legal standards have been applied. See Soliz v. Chater , 82 F.3d 373, 375
(10th Cir. 1996). Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion." Richardson v. Perales ,
402 U.S. 389, 401 (1971) (quotation omitted). However, we may not reweigh the
evidence, nor may we substitute our judgment for that of the Commissioner.
See Casias v. Secretary of Health & Human Servs. , 933 F.2d 799, 800 (10th Cir.
1991). In order to receive benefits, plaintiff needed to establish his disability
prior to June 30, 1992, his last insured date. See Henrie v. United States Dep't of
Health & Human Servs. , 13 F.3d 359, 360 (10th Cir. 1993).

Plaintiff first contends that the ALJ's conclusion that alcoholism is
a contributing factor material to his disability is not supported by substantial
evidence in the record and that he was disabled by his other impairments prior to
the expiration of his insured status. The record, however, is replete with evidence
of plaintiff's alcoholism. Plaintiff has been hospitalized a number of times for
treatment of this condition and, indeed, candidly admitted his drinking problem at
the first two administrative hearings, see Appellant's App., Vol. III at 619-20,
625, 630-31, 640, 649-50, 665, even stating that he had been a drunk since he

-11-

returned from Vietnam, see id. at 631. Plaintiff also made it clear on numerous occasions that he prefers alcohol to any type of medication that might help alleviate his pain symptoms. See, e.g. , id. at 309, 313-14; Vol. III at 665, 738-39. Plaintiff has attempted instead to establish that he was disabled by PTSD as of 1990 based on a 1998 opinion by Dr. Co tgageorge, plaintiff's consulting psychologist, that plaintiff was suffering from the syndrome as of May 1990. Even assuming this to be a proper retrospective diagnosis, "the relevant analysis is whether [plaintiff] was actually disabled prior to the expiration of [his] insured status." See Potter v. Secretary of Health & Human Servs. , 905 F.2d 1346, 1348-49 (10th Cir. 1990); see also Adams v. Chater , 93 F.3d 712, 714 (10th Cir. 1996) (holding that although a "treating physician may provide a retrospective diagnosis of [plaintiff's] condition, a retrospective diagnosis without evidence of actual disability is insufficient") (further quotation omitted). Here, as in Adams , Dr. Co tgageorge did not actually indicate that plaintiff was disabled before the expiration of plaintiff's insured status. See Appellant's App., Vol. III at 743. Nor did Dr. Hardin, who treated plaintiff for PTSD at the VA hospital during 1996. Moreover "'while the onset of [plaintiff's] impairments may be traceable to events which occurred during a period of coverage, there is no evidence to suggest that [plaintiff] experienced disabling effects of these impairments during the relevant period.'" Flint v. Sullivan , 951 F.2d 264, 267-68 (10th Cir. 1991)

(quotations omitted) (rejecting claim for disability based on PTSD as shown by subjective testimony of plaintiff and post-insured date objective medical evidence).

Nor did the ALJ fail to comply with the remand instructions of the district court and the Appeals Council. [1] The ALJ's decision reflects a clear understanding of the remand, see Appellant's App., Vol. III at 687. Plaintiff concedes that he has been evaluated by several psychologists, including Dr. Hardin and Dr. Cotgageorge, as well as psychiatrists through the VA, see Appellant's Br. at 31, but objects to the weight the ALJ gave their opinions. Plaintiff further contends that there is adequate evidence in the record that "he had a disabling mental impairment caused by his PTSD and depression as of May 15, 1990," but fails to provide any citations to this evidence. Id. Indeed, based on the 1998 evaluation, Dr. Cotgageorge opined only that plaintiff was "suffering from PTSD as of May 1990" and that if plaintiff did not use alcohol, "his PTSD symptoms alone could have rendered him unable to perform work on a sustained basis. . . ." Appellant's App., Vol. III at 743 (emphasis supplied). There is simply no indication that the condition was disabling as of plaintiff's last insured date.

---

[1] Because neither the district court nor the Appeals Council issued specific remand instructions, we assume plaintiff's arguments address the reasons given by the Commissioner in requesting the remand.

With respect to the remand issue, plaintiff also claims that the ALJ "failed to arrange for medical expert testimony to clarify medical issues with respect to [plaintiff's] mental condition; and failed to obtain any vocational expert evidence." Appellant's Br. at 29. Again, however, plaintiff concedes that a medical expert (Dr. Oren Ellis) in fact testified at the hearing. See id. at 31-32. Although the hearing testimony is not available, Dr. Ellis's conclusions, based on his extensive analysis of the medical records, are a part of the record. See Appellant's App., Vol. III at 799-807. In addition, the remand orders of the district court and Appeals Council were nonspecific, and the Commissioner's motion for remand only suggested obtaining vocational expert advice if appropriate. See id. Vol. III at 721-28. Because the ALJ concluded that, but for his alcoholism, plaintiff was not disabled from performing his past relevant work, see id., Vol. III at 703, the ALJ was not obligated to use a vocational expert. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994).

Next plaintiff complains that the ALJ failed to properly consider his limitations and complaints of pain due to his back injury. We disagree. The medical record reflects that following his 1980 lumbar microdisectomy, plaintiff improved considerably and returned to work. Appellant's App., Vol. II at 282, 292-93. He was not seen by his treating physician, Dr. Welch, for over two years between 1981 and 1983. See id. at 296. Dr. Welch prescribed two weeks worth

-14-

of rest, see id., and two months later reported that plaintiff had resolved his recurrent radicular symptoms and could return to work, avoiding only "heavy lifting and prolonged bending and twisting motions of the low back."       Id. at 297. Plaintiff did not return to Dr. Welch again until 1988, following an injury playing racquetball.    See id. at 298.  Plaintiff improved with physical therapy and was given prescriptions for Flexeril and Motrin.       See id. at 299.  Plaintiff concedes, as he must, that "there is a gap in treatment from October 1988 to February 1992," nearly two years after the alleged onset of disability.       Appellant's Br. at 36. A subsequent CT scan revealed a mild bulging disk prominent at L4-5 and some degenerative joint disease of the lumbosacral spine at the same level.       See Appellant's App., Vol. II at 485.  A lumbar examination showed a decrease in the intervertebral space at L5-S1 with osteophyte formation at L5, likely secondary to degenerative joint disease but with no other evidence of abnormality in the lumbar spine.  See id. at 486.

In April of 1992, Dr. Failer completed a medical examination report stating that plaintiff was unable to lift, carry, sit, stand, or walk during the work day, nor could he bend or climb.    See id. at 479.  However, these restrictions were accompanied by the comment "not at this time," and his unemployability for more than sixty days was tied to the notation of "until [the] eval[uation] is complete." See id.  In addition, the general statement plaintiff's condition was deteriorating

-15-

also indicated that improvement by treatment was possible.        See id. Dr. Failer

also indicated that his treatment would be for three to six months.        See id. Thus,

even if this report is considered as the opinion of a treating physician, it does not

reflect a disability expected to last twelve months or longer.        See 42 U.S.C.

§ 423(d)(A) (defining disability as inability to engage in substantial activity by

reason of impairment expected to result in death or which has lasted or is

expected to last for a period not less than twelve months).

Plaintiff was also examined during this time period by Dr. Friedman,

a consulting physician. Dr. Friedman noted plaintiff's complaints of pain when

performing certain movements. Dr. Friedman also noted that straight leg raising

in a seated position was full and pain free to ninety degrees on the right and

positive for midline low back pain on the left at approximately seventy degrees.

See id., Vol. II at 316-17. At the time plaintiff's medications included a Maxair

inhaler, Nifedipene, and Salsalate. [2]

Although plaintiff complains that there is no discussion by the ALJ of why

he adopted Dr. Friedman's opinion over Dr. Failer's, plaintiff does not show how

these opinions are inconsistent. Moreover, the ALJ did discuss specific evidence

---

[2]    The inhaler was for respiratory difficulties, Nifedipene is used to treat
hypertension, and Salsalate is a nonsteroidal anti-inflammatory.

he relied on, and he is not obligated to discuss each piece of evidence.     See

Clifton v. Chater  , 79 F.3d 1007, 1009-10 (10th Cir. 1996).

Similarly, plaintiff contends that the ALJ failed to give the appropriate

weight to the treating and examining physicians' opinions.     Here, he rehashes

earlier arguments emphasizing his interpretation of the opinions of

Dr. Cotgageorge.  Plaintiff states that the doctor opined plaintiff "could be

disabled even if he did not have a problem with alcoholism due to his mental

limitations from his PTSD."     See Appellant's Br. at 40.  Dr. Cotgageorge's report

reflects that the doctor stated his opinion that plaintiff was suffering from PTSD

as of May 1990, but it is not clear at what point in time the doctor believed the

PTSD symptoms alone could have rendered plaintiff unable to work on

a sustained basis.   See Appellant's App., Vol. III at 743.  Likewise Dr. Failer's

opinion was expressed in connection with the need for further evaluation.

Dr. Hardin, the VA psychologist who treated plaintiff during 1996, did not state

that plaintiff's PTSD symptoms were even present prior to his last insured date,

much less that plaintiff was disabled or unemployable as of that time.     See id.

Vol. II at 584.  Moreover, the responsibility "for determining the ultimate issue of

disability is reserved to the [Commissioner]."     See Castellano v. Secretary of

Health and Human Servs.   , 26 F.3d 1027, 1029 (10th Cir. 1994) (further citations

omitted).  Essentially plaintiff is asking this court to reweigh the evidence, which,

of course, we may not do.   See Qualls v. Apfel, 206 F.3d 1368, 1371 (10th Cir. 2000).

Finally, plaintiff claims the case should be remanded to complete the record because the transcript of the last hearing is not available.   Although he states that the record is insufficient for this court to review, he fails to specify what testimony transpired during the hearing that is essential to our determination.  Moreover, the extensive notes of the medical expert who testified are part of the record.   See Appellant's App., Vol. III at 799-807.  This argument is without merit.

The judgment of the United States District Court for the District of Colorado affirming the Commissioner's denial of disability benefits is AFFIRMED.

Entered for the Court


Stephen H. Anderson
Circuit Judge