**Johnny B. PATTON, Plaintiff–Appellant,**

v.

**Larry G. MASSANARI,\* Acting Commissioner of Social Security Administration, Defendant–Appellee.**

No. 01–7023.

United States Court of Appeals, Tenth Circuit.

Oct. 4, 2001.

---

\* On March 29, 2001, Larry G. Massanari became the Acting Commissioner of Social Security. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Mr. Massanari is substituted for William A. Halter as the appellee in this action.

Before HENRY, JOHN C. PORFILIO, and MURPHY, Circuit Judges.

ORDER AND JUDGMENT **

ROBERT H. HENRY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Mr. Johnny B. Patton appeals from the district court's order affirming the decision of the Commissioner of Social Security to terminate his social security disability insurance benefits. *See* 42 U.S.C. § 423(f);

---

** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

20 C.F.R. § 404.1594. We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and reverse.

## I. Standards of review and burdens of proof

We review the Commissioner's termination of benefits to determine whether substantial evidence supports the decision and whether correct legal standards were applied. *Glenn v. Shalala,* 21 F.3d 983, 984 (10th Cir.1994). "We examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Id.* (quotation omitted).

> Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [Commissioner]. A decision is not supported by substantial evidence if there is overwhelming evidence to the contrary or if there is only a mere scintilla of evidence to support it.

*Pacheco v. Sullivan,* 931 F.2d 695, 697 (10th Cir.1991) (citations omitted).

▇▇ In a termination of benefits case, the Commissioner bears the burden of proving both that (1) a claimant's medical condition has improved so as to increase his or her ability to work, and (2) the claimant is currently able to engage in substantial gainful activity. *See Glenn,* 21 F.3d at 987; § 404.1594(a). The Commissioner has a duty to develop the medical record to ensure that his termination decision is supported by substantial evidence. *See* § 423(d)(5)(B) (requiring Commissioner, when determining whether a claimant "continues to be under a disability," to develop a complete medical history of at least the twelve-month preceding period, and requiring the Commissioner to "make every reasonable effort to obtain from the [claimant's] treating … health care provider … all medical evidence … necessary in order to properly make [a disability determination]"). Mr. Patton asserts that (1) medical improvement was not shown in the medical records; (2) the ALJ failed to use proper legal standards and/or to order additional testing in assessing Mr. Patton's residual functioning capacity to do work; (3) the Commissioner's decision that Mr. Patton is no longer disabled is not supported by substantial evidence; and (4) the ALJ failed to consider Mr. Patton's mental restrictions and limitations in his hypothetical to the vocational expert.

## II. Facts and proceedings

After suffering work-related injuries, Mr. Patton had two back surgeries. In the first, the doctors performed a bilateral laminotomy, foraminotomy, and neurolysis with bilateral removal of a herniated disc. App. at 167. When that surgery failed to relieve his symptoms, in 1992 he underwent an anterior lumbar fusion. *Id.* In 1992 an administrative law judge (ALJ) adjudged Mr. Patton to be disabled since 1989 under 20 C.F.R. § 404, Subpt. P, App. 1, Listing 1.05(C) (vertebrogenic disorders with pain, muscle spasm and significant limitation of motion in the spine and appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss). App. at 138. Because Dr. Brotherton, Mr. Patton's treating physician/surgeon, held out some hope in 1992 that Mr. Patton would eventually heal well enough and get adequate pain relief to return to "some level of activity," *id.* at 134, the ALJ noted that if Mr. Patton was still not working before January 21, 1993, he should be "fully re-examined and re-evaluated." *Id.* at 138. Mr. Patton never returned to work.

In 1995, the Commissioner re-evaluated Mr. Patton's disability status, sending him

to Dr. Stokes, a consulting physician, for examination. Dr. Stokes noted that Mr. Patton still complained of pressure in his lower back while sitting or standing for long periods, tenseness in his neck and right arm (which had a bone spur in the elbow), and pain in both legs, with numbness and tingling. *Id.* at 221. He also complained of swelling in the joints of both hands. *Id.* Mr. Patton was still taking prescription pain medication, as well as medication for depression. *Id.* at 244, 245. Dr. Stokes noted tenderness in Mr. Patton's neck, interscapular, and lumbar areas. He documented that Mr. Patton had a limited range of motion in his back, neck, hips, and wrists. *See id.* at 226, 227. He opined that Mr. Patton could "sit or stand, move about or travel for short periods of time" and that he was impaired in his ability to lift and carry, although he did not state how long Mr. Patton could sit or stand continuously or what maximum weights Mr. Patton could lift. *See id.* at 225. He recommended that Mr. Patton

> be taught the advantages of using the leg muscles instead of using the back muscles. Also, an additional study such as MRI or myelogram should be completed at this time and reported to Social Security Disability evaluation.... [Q]uite possibly there may be some type of medical intervention or physical therapy that could help this young man become well enough to be eligible to work, if only part time.

*Id.* at 225.

The only other medical records before the Commissioner were those from the Chickasaw Nation Indian Health Facility from 1/28/94 to 10/20/95.[1] Based upon Dr. Stokes' report, in January 1996 the Commissioner determined that, although Mr.

Patton continued to have discomfort in his back, he was

> able to move about well enough to do jobs that do not require heavy lifting or frequent bending. Medical evidence does not show any other impairments which keep you from working. Current evidence shows that your health has improved. Although you cannot do the work you did in the past ... you can perform other work.

*Id.* at 145. The Commissioner informed Mr. Patton that his disability checks would be discontinued.

Mr. Patton requested reconsideration and submitted additional medical records. These records showed that Mr. Patton continued to be treated for lower back and elbow pain and depression during 1995 and 1996. *See id.* at 233–248. He had undergone several trigger-point injections for back pain in 1996, but did not obtain long-term relief from them. *See id.* at 233–39. Mr. Patton was diagnosed as having a depressive disorder and generalized anxiety disorder with dysphoric mood and difficulty sleeping. *Id.* at 229.

Although he had not actively treated Mr. Patton since 1993, in October 1996 Dr. Brotherton wrote a follow-up letter stating that, "since the time of his original surgery under me, [he] has been 100 percent disabled." *Id.* at 250. He also stated that Mr. Patton still had not improved such that he could perform at levels required for workmen, and that his "limitations of pain and disability are all in a stable pattern." *Id.*

The Commissioner granted Mr. Patton's motion for reconsideration and set a hearing. At the February 1997 hearing, Mr. Patton testified that his pain was disabling, claiming that he had to lay down during

---

1. Those records have not been included in the appendix before this court and the Commissioner did not refer to them in making his termination of benefits decision.

the day because if he sat or stood too long, it hurt too badly. *Id.* at 281. He testified that his legs began tingling and pain began building if he sat or stood for more than thirty minutes. *Id.* at 287. He testified that pain kept him from being able to concentrate on doing a job. *Id.* at 288. The ALJ considered the new medical records, Dr. Stokes' report, Dr. Brotherton's letter, and Mr. Patton's testimony. On January 29, 1998, the ALJ affirmed the 1996 decision that Mr. Patton's benefits should be terminated. *Id.* at 21. Mr. Patton appealed the ALJ's decision to the Appeals Council and submitted more medical testimony from his treating physicians. The Appeals Council considered these records but concluded that "neither the contentions nor the additional evidence provides a basis for changing the [ALJ's] decision." *Id.* at 6. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

## III.  Discussion

### A.  Medical improvement

■ The ALJ first determined that Mr. Patton's condition had improved since 1992 because it no longer met any medical listing. *See* 20 C.F.R. § 404.1594(c)(3)(i); *see also Glenn,* 21 F.3d at 985–87 (medical improvement found where, among other reasons, claimant no longer met applicable medical listing). Medical improvement "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s)." § 404.1594(b)(1). Given Dr. Stokes' report that there was no sensory loss and no muscle spasm at the time of his examination in 1995, *see* App. at 228, we conclude that this finding is supported by substantial evidence. *See* Listing 1.05(C) (requiring findings of both muscle spasm and sensory loss in order to meet listing). This does not end the inquiry,

however. Even if the Commissioner determines that a claimant's condition has improved such that he no longer meets a medical listing, he is still required to establish that the claimant's functional capacity to do basic work activity has improved to the level that he can engage in sustained and substantial gainful activity. *Glenn,* 21 F.3d at 987.

### B.  Dr. Brotherton's assessment

■ "A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." *Goatcher v. U.S. Dep't of Health & Human Servs.,* 52 F.3d 288, 289–90 (10th Cir.1995). The ALJ discounted Dr. Brotherton's 1996 assessment that Mr. Patton could not perform work because Dr. Brotherton had not treated Mr. Patton since 1993 and because the ALJ believed that the assessment was not well-supported by clinical and diagnostic findings. App. at 18. Specifically, the ALJ found that Mr. Patton had intact neurological functions and good strength in his lower extremities, did not experience frequent acute exacerbation of his back pain, and that his chronic pain appeared responsive to medication. *Id.* Unfortunately, the ALJ did not explain what medical records supported some of these contrary findings, and it appears that no physician has determined what Mr. Patton can actually lift or how long he can sit or stand on a regular basis since his 1992 surgery. Our review of the medical records indicates that, although Dr. Stokes indicated that Mr. Patton had intact neurological functions in 1995, *see, e.g., id.* at 224, there appear to be no medical reports recording leg strength, and the records are replete with evidence that Mr. Patton's chronic back pain did not respond well to various types of pain medications or treatment modalities.

Dr. Brotherton had personal knowledge of the seriousness of Mr. Patton's back condition, the complex surgeries he had performed, Mr. Patton's continued need for pain intervention modalities such as TENS units and strong prescription pain medication a year after surgery, as well as the fact that Mr. Patton experienced increases in pain with minor provocation. *See id.* at 250. The medical records showed continued treatment with trigger-point injections and various prescription medications, including muscle relaxants, and that Mr. Patton had substantial limitation of spinal motion with muscle tenderness and radicular leg pain in 1995 and 1996, which support Dr. Brotherton's 1996 assessment. The ALJ erred in totally discounting Dr. Brotherton's assessment.

## C. Failure to consider mental limitations

The ALJ found that Mr. Patton suffered from depression and anxiety, but stated there was "no showing that his depression has been persistently acute or exacerbated ... [or] that he suffers considerable reductions in his cognitive functions, intellectual functions, memory, concentration, attention, social function, or behavior." *Id.* at 18. The ALJ indicated on the psychiatric review technique form that Mr. Patton's disorders were "slight" to "moderate," *id.* at 24, even though Mr. Patton claimed that he could not concentrate on mental tasks enough to learn new skills, the medical records showed that he had tried and was taking several kinds of anti-depression and anti-anxiety medications, and no medical records/tests indicated how Mr. Patton's depression and anxiety and medications affected his ability to do work. *See Carter v. Chater,* 73 F.3d 1019, 1022 (10th Cir.1996) (medical diagnosis of depression and claims of disabling depression requires ALJ to develop record concerning depression); 42 U.S.C. § 421(h) (providing that where there is evidence of a mental impairment, Commissioner should make "every reasonable effort to ensure that a qualified psychiatrist or psychologist" completes a case review and residual functional capacity assessment). We therefore also remand for further development of the record concerning Mr. Patton's claims of depression.

## D. Substantial evidence.

Using limitations first referenced by Dr. Brotherton in 1992 when predicting what Mr. Patton *would* be limited to *if* he obtained adequate pain relief and *if* his progress were to be "as good as can be expected" (assuming no complications from the surgery arose), App. at 134, the ALJ obtained expert vocational testimony indicating that Mr. Patton could perform light and sedentary jobs using his hands. *Id.* at 19. We note, however, that the medical record does not contain any evidence indicating that Mr. Patton's medical condition has ever improved to the degree that he can successfully and safely engage in light or sedentary substantial gainful activity. *See* 20 C.F.R. § 404.1567 (physical exertion requirements). Speculation regarding what a claimant may be able to do *if* he improves is not evidence of actual residual functional capacity, especially in light of a treating physician's statement that the claimant has not yet improved to the level that he can consistently do workman activities. *Cf. Pacheco,* 931 F.2d at 698 (holding that if benefits recipient is following prescribed treatment for a diagnosed ailment of disabling severity, benefits should not cease because a consulting physician opines that the recipient may theoretically be able to do work in the future if further treatment is followed).

## E. Supplemental medical reports

Mr. Patton submitted supplemental medical records to the Appeals Council.

In May, 1998 Dr. Brotherton examined Mr. Patton and took additional x-rays. He noted that Mr. Patton's range of motion was significantly decreased, and that his status insofar as being disabled "basically is unchanged" from 1992, when he had first stated that Mr. Patton was disabled. App. at 270. He could offer no new method of treating Mr. Patton's back problems. *Id.*

Dr. Wills, his treating physician from the Chickasaw Indian Clinic, wrote an opinion letter in 1998 stating that Mr. Patton had the classic findings of rheumatoid arthritis, with loss of flexibility, swelling, heat, and thickening of the synovial lining of the joints of both hands. *Id.* at 271. It was his opinion, that "[t]he problem of rheumatoid arthritis, added to his lumbar fusion, only accentuates the fact that this man should be considered disabled." *Id.* In 1999 Dr. Wills wrote another letter stating that Mr. Patton's condition had deteriorated, that arthritis significantly affected his grip strength and ability to use his hands; that he was experiencing more radicular pain from his lower back, and that he had major depression. *Id.* at 272. Dr. Wills stated that Mr. Patton was "not currently able to physically or emotionally function in the workplace." *Id.*

These records corroborate that the Commissioner's decision to terminate benefits is not supported by substantial evidence. Over five years have now passed since the Commissioner terminated Mr. Patton's disability benefits without having first ensured, through adequate development of the medical record, that Mr. Patton could consistently perform full-time substantial gainful activity. *See Glenn,* 21 F.3d at 987 ("the [Commissioner] has recognized that, before termination of benefits, the [Commissioner] has the burden of showing that a claimant has the ability to engage in substantial gainful activity"). In

light of Dr. Brotherton's repeated assessments that Mr. Patton has remained unable to work since 1992, we remand this case with instructions to reinstate Mr. Patton's disability benefits, including retroactive payments, until the Commissioner conducts further medical record development, and, if merited, issues a valid order terminating benefits. *See Pacheco,* 931 F.2d at 698.

The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED and REMANDED with instructions to remand to the Commissioner for immediate reinstatement and award of benefits.