Gilberto OLIVAS, Plaintiff–Appellant,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.

No. 01–1430.

United States Court of Appeals,
Tenth Circuit.

June 19, 2002.

Before SEYMOUR, PORFILIO, and BALDOCK, Circuit Judges.

ORDER AND JUDGMENT *

SEYMOUR, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Gilberto Olivas appeals from an order of the district court affirming the Commissioner's determination to terminate his prior award of Social Security disability benefits.[1] We affirm.

We review the Commissioner's decision to terminate benefits to determine whether substantial evidence supports the decision and whether correct legal standards were applied. *Glenn v. Shalala,* 21 F.3d 983, 984 (10th Cir.1994). "We examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Id.* (quotation omitted).

An eight-part sequential evaluation process is used in termination reviews. *See* 20 C.F.R. § 404.1594(f)(1) through (8). The Commissioner bears the burden of showing medical improvement by establishing that the claimant's medical condition has improved, the improvement is related to the claimant's ability to work, and the claimant is currently able to engage in substantial gainful activity. *Glenn,* 21 F.3d at 987 (citing regulations). In decid-

ing whether to terminate benefits, a claimant's impairments are considered together. *See id.*

Mr. Olivas was originally found to be disabled as of August 19, 1991, due to a work-related traumatic amputation of his left arm with resulting depression and post-traumatic stress disorder (PTSD). The administrative law judge (ALJ) determined his disability ceased as of May 31, 1996, as he could perform limited work at the light-work exertional level.[2]

■ On appeal, Mr. Olivas argues the ALJ applied the wrong legal standards in evaluating his mental impairments and residual functional ability, in conjunction with which he gave inappropriate weight to the opinions of his treating physicians and the psychological consultant. "An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." *Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir.2001).

Mr. Olivas fails to note that the opinions he cites as most supportive of his position that he remained disabled after May 1996, were issued by his treating physicians in 1992, a time when he was admittedly disabled. The 1996 opinions were proffered in response to counsel's request for an opinion as to whether Mr. Olivas could return to work at the place where he was injured, as his former employer had offered him a job as a night watchman. The

---

1. After a claimant has been awarded disability benefits, the Commissioner is required to re-

view the case periodically to determine whether there has been any medical improvement in the claimant's condition and whether that improvement affects the claimant's ability to work. 20 C.F.R. § 404.1594(a).

2. Mr. Olivas concedes that due to a successful vocational rehabilitation trial work period, he is no longer disabled after February 1998.

consensus was that he should not return there due to the anticipated psychological impact such employment could have. His psychologist recommended that he return to work at a low stress environment which was "structurally different from the one in which he was injured." App. Vol. III at 480. The state consulting psychologist concluded that Mr. Olivas could return to work limited to "full range unskilled work" with decreased interpersonal contact. *Id.* at 493. No indication was presented that Mr. Olivas could not perform substantial gainful activity if the identified limiting factors were considered.

Mr. Olivas also contends the ALJ did not include all of his limitations in the hypothetical question presented to the vocational expert (VE), and did not resolve discrepancies between the testimony of the vocational expert (VE) and the Dictionary of Occupational Titles (DOT). Hypothetical questions need only reflect impairments and limitations supported by the record. *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir.1996).

■ The VE testified that under the hypothetical as set forth by the ALJ, Mr. Olivas could perform light work with specified restrictions. Mr. Olivas' counsel added to the hypothetical by positing that he was moderately restricted in his ability to work with others, and needed two to three extra breaks a day of less than thirty minutes. The VE testified that Mr. Olivas would still be able to work, despite the additional restrictions. As the VE testified that Mr. Olivas could perform substantial gainful activity, even considering the limitations counsel set forth,[3] no error occurred by the ALJ's failure to fully discuss the limitations set forth in the record and accepted by him earlier in his opinion. *Compare*

App. Vol. I at 117–18 (claimant cannot be exposed to cold for more than fifteen minutes, has chronic, episodic, major depression and PTSD) *with id.* at 158 (hypothetical not setting forth above restrictions).

■ Counsel wanted the VE to identify specific employers who would hire someone with Mr. Olivas' limitations. This is outside the expertise of the VE and outside the requirements of the agency. *See* 42 U.S.C. § 423(d)(2)(A) (claimant is not disabled if he can "engage in any other kind of substantial gainful work which exists in the national economy, *regardless of whether ... a specific job vacancy exists for him, or whether he would be hired if he applied for work.*") (emphasis added).

■ Finally, Mr. Olivas contends the ALJ did not resolve discrepancies between the testimony of the VE and the DOT as to the requirements of the jobs identified by the VE as being ones Mr. Olivas could perform. In particular, counsel notes that the jobs identified by the VE require language skills beyond that possessed by Mr. Olivas. The ALJ presented Mr. Olivas' language limitations as part of the hypothetical. The inability to read and write English is a minimal limitation in unskilled work, such as that Mr. Olivas was found able to perform. *See, e.g.,* 20 C.F.R. Pt. 404, Subpt. P, App.2, § 202.00(g). While, as the district court held, Mr. Olivas might be unable to perform the job as switchboard operator, he can still work as a cashier or surveillance monitor, jobs which exist in significant numbers in the national or regional economy and, therefore, meet the statutory and regulatory requirements.

The judgment of the United States District Court for the District of Colorado is

---

3. Counsel did posit one limitation, i.e., that Mr. Olivas was limited in consistence and pace twenty-five percent of the time, which would cause employment to fail. That limitation is not supported by the record.

AFFIRMED for substantially the reasons set forth by the district court in its well-reasoned opinion of July 21, 2001.

---

* Charles Ray replaced Stephen Kaiser as Warden, Davis Correctional Facility in January, 2002.

** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.