**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 5 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

NORMA C. SPICER,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

      Defendant-Appellee.

No. 02-5072
(D.C. No. 01-CV-24-M)
(N.D. Okla.)

---

ORDER AND JUDGMENT   *

---

Before **EBEL** , **HENRY** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Norma C. Spicer appeals from a district court order affirming the Commissioner's decision denying her application for social security disability benefits. The district court concluded that substantial evidence supported the administrative law judge's (ALJ) determination that plaintiff was not disabled within the meaning of the Social Security Act because, despite her limitations, she was able to perform her past work in data entry. Exercising jurisdiction pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we reverse and remand the matter to the district court with instructions to remand to the Commissioner for further proceedings consistent with this order and judgment.

**I.**

Plaintiff filed her application for benefits in 1996, alleging inability to work due to pain. Her application was denied initially and on reconsideration. Following a hearing, the ALJ found that plaintiff was impaired by fibromyalgia and gastrointestinal problems, but that the severity of her impairments did not meet or equal a listing requirement. The ALJ then found that, despite her limitations, plaintiff had the residual functional capacity (RFC) to perform a full range of light or sedentary jobs and was capable of doing her previous work in data entry. Thus, the ALJ concluded that plaintiff was not disabled at step four of the Commissioner's five-step sequential process for determining disability. *See* 20 C.F.R. § 404.1520(e); *Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir.

-2-

1988) (discussing the five-step process). Plaintiff sought judicial review in the district court, and the parties consented to assignment of the case to the magistrate judge, who affirmed the decision of the Commissioner. On appeal, plaintiff alleges that: (1) the ALJ erred in assessing plaintiff's residual functional capacity (RFC) for light work; (2) the ALJ failed to assess correctly plaintiff's credibility regarding the severity of her pain; and (3) the ALJ erred in the remainder of his analysis at step four.

## II.

We review the Commissioner's decision to determine whether the relevant findings are supported by substantial evidence in light of the entire record, and to determine whether the Commissioner applied the correct legal standards. *Hargis v. Sullivan,* 945 F.2d 1482, 1486 (10th Cir. 1991). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir. 1994) (quotations omitted).

## III.

In his decision denying benefits, the ALJ stated: "Finding that the claimant's symptoms relating to her fibromyalgia and gastrointestinal problems for the most part have been quiescent, the Administrative Law Judge finds it reasonable to conclude that the claimant retains the residual functional capacity to perform light work." Aplt. App., Vol. II at 17. The ALJ further stated that "the claimant has been subject to no additional limitations of an exertional or non-exertional nature further restricting her . . . ." Id. at 18. On appeal, plaintiff argues that the ALJ failed to apply the correct legal standard to assess plaintiff's RFC and that the assessment was not based on substantial evidence. Plaintiff's primary argument in this regard is that the ALJ failed to consider adequately her diagnosed osteoarthritis in assessing her RFC. We agree.

RFC is an administrative finding of what an individual can still do despite his or her limitations. See 20 C.F.R. § 404.1545(a). It assesses the extent to which an individual's "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [an individual] can do in a work setting." Id. The Social Security Administration regulations clearly state that where an individual has more than one impairment, "we will consider all of [the] impairment(s) of which we are aware." Id. More specifically, the regulations state that when a claimant has a severe impairment, but the symptoms,

-4-

signs, and laboratory findings do not meet or equal those of a listed impairment in the regulation's appendix, the ALJ nevertheless "will consider the limiting effects of all . . . impairment(s), even those that are not severe, in determining . . . residual functional capacity." *Id.* § 404.1545(e). As the Commissioner has stated:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

Social Security Ruling 96-8p, Soc. Sec. Rep. Serv., Rulings 1992-2002, 143, 148 (West 2002) (hereinafter SSR 96-8p). For purposes of defining disability, a physical impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "A physical . . . impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 404.1508.

While an overall review of the medical record in this case reveals complaints of pain chiefly in plaintiff's lower back and hips, there are several

documents pointing to a demonstrable impairment involving plaintiff's hands that should have been considered by the ALJ in assessing plaintiff's RFC. On September 30, 1994, plaintiff was seen by Dr. Landon Price, who observed, "[t]he patient has enlarged PIP and DIP joints. I do not know if this is early degenerative arthritis or a sign of inflammatory arthritis."[1] Aplt. App., Vol. II at 182. On September 30, 1996, Dr. Michael Ritze examined plaintiff and noted that "[t]here is some noticeable positive Heberden's nodes in the distal phalanges bilaterally in the upper extremities."[2] *Id.* at 152. He noted some decreased range of motion in plaintiff's wrists and fingers and diagnosed her with, among other things, "probable osteoarthritis." *Id.* at 153. Plaintiff underwent X-rays the following November, which showed "increased sclerosis . . . [and] mild decrease in the joint space . . . consistent with mild osteoarthritis" for both wrists. *Id.* at 160. X-rays performed on plaintiff's hands showed a moderate decrease in the joint spaces and erosive changes in her fingers, "consistent with a degenerative osteoarthritis." *Id.* at 161. In April 1997, plaintiff was examined by Dr. Lawrence Jacobs, who noted

---

[1]     PIP, or proximal interphalangeal joints, are "the synovial joints between the proximal and middle phalanges of the fingers and of the toes." Stedman's Medical Dictionary 815 (25th Ed. 1990). DIP, or distal interphalangeal joints, are "the synovial joints between the middle and distal phalanges of the fingers and of the toes." *Id.*

[2]     Heberden's nodes are "exostoses about the size of a pea or smaller, found on the terminal phalanges of the fingers in osteoarthritis, which are enlargements of the tubercles at the articular extremities of the distal phalanges." Stedman's Medical Dictionary 1057 (25th Ed. 1990).

that "[t]here is a 1+ synovitis of the right second and third PIP joints. Mild decreased range of motion. Several Heberden's nodes and Bouchard's nodes." *Id.* at 277. Dr. Jacobs also diagnosed plaintiff with, among other things, osteoarthritis.

At the hearing, plaintiff clearly indicated that her inability to work was due, in part, to the pain in her fingers and hands. *See id.* at 331, 338. The medical expert noted that, in his review of the medical record, "[t]hey did find degenerative joint disease such as she has on her fingers," but characterized the alleged pain in plaintiff's hands as "simple mild changes" that were typical in all individuals. *Id.* at 341, 342. Under questioning by plaintiff's counsel, the medical expert acknowledged that plaintiff had signs of osteoarthritis in her hands that could be painful and commented that plaintiff's Heberden's nodes were noticeable without examination. *Id.* at 344-45. The medical expert concluded that the record showed an objective basis for pain, but the ALJ and medical expert agreed to order another consultative examination to supplement the record.

That examination, performed by Dr. Varsha Sikka in February 1998, showed minimal stiffness and tenderness in plaintiff's wrists. In examining plaintiff's MP, PIP and DIP joints, Dr. Sikka noted, "[t]he patient has degenerative joint disease. Has stiffness and tightness and range of motion is limited, right is worse than

left." *Id.* at 296. The doctor concluded that plaintiff's use of her hands for repetitive movement was limited for both grasping and fingering. *Id.* at 301.

Despite this record of plaintiff's osteoarthritis, the ALJ's only remark regarding the impairment was in summarizing plaintiff's hearing testimony, stating that "[s]he has intense pain in her fingers." Aplt. App., Vol. II at 16. Other than this passing reference, the ALJ never mentioned the impairment in determining that plaintiff had the RFC to perform light work in general, and to work as a computer operator in particular. While a careful review of the decision indicates that the ALJ considered the relevant medical record as it related to plaintiff's fibromyalgia and gastrointestinal problems, there is no indication that the ALJ ever considered plaintiff's diagnosed and medically documented osteoarthritis either alone or in combination with plaintiff's other impairments.

The district court noted the presence in the record of the X-rays indicating osteoarthritis. Nevertheless, the district court affirmed the ALJ's decision on plaintiff's RFC based primarily on the ALJ's general statement that he had considered all of the evidence in the record. The court concluded that "[i]n light of Plaintiff's piano playing and other daily activities and the lack of medical evidence of a severe impairment in this regard, there was a reasonable basis for the ALJ to conclude that Plaintiff's ability to perform light work activities was not limited because of her hands." Aplt. App., Vol. I at 70-71. While we agree with

-8-

the district court that the mere diagnosis of an impairment does not necessarily compel a finding of disability, the regulations do require the ALJ to at least consider a demonstrated impairment throughout the disability determination process. *See* 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1523. In the present case, the ALJ's failure to even mention plaintiff's osteoarthritis leads us to doubt that he formed any conclusion at all regarding plaintiff's hands.

Appellees argue that "[t]he ALJ's consideration of the testimony in combination with his discussion of various impairments was sufficient to demonstrate that he considered their combined effects. To require a more elaborate articulation of the ALJ's thought processes would be unreasonable." Aplee. Br. at 16. We disagree with this contention, which minimizes the duty of the ALJ to make specific and detailed predicate findings and to include a sufficient narrative discussion concerning a claimant's RFC. *See* SSR 96-8p at 149 (stating that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, must contain a thorough discussion and analysis of the objective medical and other evidence, and must include a discussion of why reported symptom-related functional limitations can or cannot reasonably be accepted as consistent with the medical evidence); *see also Winfrey v. Chater,* 92 F.3d 1017, 1023-24 (10th Cir. 1996) (describing the ALJ's responsibilities in assessing RFC under phase one of step four of the

Commissioner's process). On the record before us in this case, the fact that the ALJ considered the hearing testimony (indicating osteoarthritis in plaintiff's hands) along with his discussion of her various other impairments, does not demonstrate that he specifically considered the limitation to her hands either individually or in combination with her other demonstrated impairments.

While this court has no desire to needlessly constrain ALJs by erecting procedural hurdles that block the ultimate goal of determining disability, we think it is reasonable nonetheless to require that the ALJ's decision be sufficiently articulated so that it is capable of meaningful review. The ALJ's decision in the present case provides this court with no evidence that plaintiff's impairment to her hands was considered along with her fibromyalgia and gastrointestinal problems. The ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) (holding "[t]he record must demonstrate that the ALJ considered all of the evidence," and, while he needn't discuss every piece of evidence, the ALJ must "discuss[] the evidence supporting his decision, . . . the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects"). When, as here, an ALJ does not provide any explanation for rejecting significant medical evidence, we are "left to speculate what specific evidence led the ALJ to [his conclusion]," *Kepler v. Chater,* 68 F.3d 387, 391

(10th Cir. 1995), and thus, we cannot meaningfully review the ALJ's determination. *See Clifton,* 79 F.3d at 1009. While there may be substantial evidence from which the ALJ might conclude that plaintiff is not disabled after careful consideration of her additional impairment, "we are not in a position to draw factual conclusions on behalf of the ALJ." *Drapeau v. Massanari,* 255 F.3d 1211, 1214 (10th Cir. 2001) (quotation omitted). We believe that the need for sufficient reasoning is especially acute in this case, where the ALJ has concluded that plaintiff has the capacity to perform work in an occupation that requires extensive use of one's hands.[3]

Failure to consider a known impairment in conducting a step-four inquiry is, by itself, grounds for reversal. *Washington,* 37 F.3d at 1440. In this case, the ALJ's failure to consider plaintiff's limitation based on her diagnosed osteoarthritis in assessing her RFC also infected the ALJ's findings of credibility and further analysis under step four. Accordingly, we do not address plaintiff's additional arguments on these points. We note, however, that on remand the ALJ must make sufficiently specific findings in each of his relevant determinations so that his decision is capable of meaningful review. *See Luna v. Bowen,* 834 F.2d

---

[3] We note that, while the use of vocational expert testimony is not required at step four, the record includes such testimony indicating that, if plaintiff's impairment to her hands were considered in this case, that impairment would likely preclude her from working as a data processor or as a pianist. *See* Aplt. App., Vol. II at 130.

-11-

161, 163 (10th Cir. 1987) (describing the proper analysis for evaluating subjective complaints of pain); *Winfrey,* 92 F.3d at 1023-25 (describing, in detail, the three phases of Commissioner's step-four analysis).

## IV.

The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED, and the case is REMANDED with directions to remand the action to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court

David M. Ebel
Circuit Judge