Bryan D. BRANT, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 06–1160 MLB.

United States District Court,
D. Kansas.

Jan. 30, 2007.

John L. Brennan, Brennan Law Group, PA, Wichita, KS, for Plaintiff.

Connie R. Dearmond, Office of United States Attorney, Wichita, KS, for Defendant.

### *ORDER*

MONTI L. BELOT, District Judge.

Ten days having passed, and no written objections being filed to the proposed findings and recommendations filed by the magistrate judge John Thomas Reid, and after a de novo determination upon the record pursuant to Fed.R.Civ.P. Rule 72(b), the court accepts the recommended decision and adopts it as its own.

IT IS SO ORDERED.

### RECOMMENDATION AND REPORT

JOHN THOMAS REID, United States Magistrate Judge.

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

 The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala,* 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan,* 794 F.Supp. 1045, 1047 (D.Kan.1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn,* 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 124 S.Ct. 376, 379–380, 157 L.Ed.2d 333 (2003).

▮ The claimant bears the burden of proof through step four of the analysis. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Nielson*, 992 F.2d at 1120; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f, g).

Administrative law judge (ALJ) Wendell C. Fowler issued his decision on December 27, 2005 (R. at 13–23). At step one, the ALJ found that plaintiff had not performed substantial gainful activity since March 19, 2002 (R. at 13, 57, 441). At step two, the ALJ stated that plaintiff has psoriatic arthritis. The ALJ also found that plaintiff has mild degenerative patella and a history of diagnosis of bipolar disorder with depression and seizure disorder, which were found to be non severe (R. at 14, 21–22). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14). After establishing plaintiff's RFC, the ALJ found at step four that plaintiff cannot perform past relevant work (R. at 21). At step five, relying on the testimony of a vocational expert (VE), the ALJ found that plaintiff could perform a significant number of other jobs in the national economy, specifically jobs as an animal control

clerk and an animal shelter clerk (R. at 21). Therefore, the ALJ concluded that plaintiff was not disabled.

### I. Did the ALJ err in his finding that plaintiff did not have a severe mental impairment?

■ The burden of proof at step two is on the plaintiff. *See Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir.1993) (the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997); *see Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988) ("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[1] *Williams*, 844 F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c), § 416.912(c). The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists. 20 C.F.R. § 404.1513(a), § 416.913(a). Evidence from other medical sources, including therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work. 20 C.F.R. § 404.1513(d)(1), § 416.913(d)(1).

■ In his decision, the ALJ discussed the psychological evaluation of Dr. Schwartz as follows:

The claimant underwent a Psychological Evaluation by Dr. Michael Schwartz, Ph. D., on January 13, 2004 (Exhibit 5F). Dr. Schwartz noted the claimant helps around the house, fixes lunch, gets his kids down for a nap, does housework, reads, take the kids to the park, fixes dinners, cares for his children, and puts them to bed. He further noted he can cook, do dishes, can change the bed, vacuum, and does okay with handling money (Exhibit 5F). The claimant denied any inpatient psychiatric treatment. He noted that he had been an outpatient at Prairie View and was there for only one week. Under hobbies, it was noted he likes to work with computers, takes care of his plants, and interacts with his family. Dr. Schwartz noted he had been diagnosed with bipolar II disorder and personality disorder (NOS) in the past. After giving him a mental status evaluation, he opined the claimant could remember work location and procedures

---

1. Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b) [416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85–28, 1985 WL 56856 at *3. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir.2004).

and understand and follow simple directions. He further state he believed he had adequate attention, concentration, and short-term memory. Dr. Schwartz diagnosed the claimant with psychological factors affecting physical condition and no diagnosis for Axis II (Exhibit 5F).

(R. at 19).

However, the ALJ failed to set forth fully Dr. Schwartz's opinion regarding plaintiff's potential for competitive employment. That opinion, in full, is as follows:

I believe he could remember work location and procedures and understand and follow simple instructions. I believe he has adequate attention, concentration, and short-term memory. **I believe he does have a perception of pain which would make it difficult for him to function on the job.**

(R. at 243, emphasis added). In other words, it is the opinion of Dr. Schwartz that it would be difficult for the plaintiff to function on the job because of plaintiff's perception of pain. At no point did the ALJ mention or discuss the belief or opinion of Dr. Schwartz that plaintiff had a perception of pain which would make it difficult for the plaintiff to function on the job.

■■■■ An ALJ must evaluate every medical opinion in the record. *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004). It is clear legal error to ignore a medical opinion. *Victory v. Barnhart,* 121 Fed.Appx. 819, 825 (10th Cir.2005). An ALJ is not entitled to pick and choose from a medical opinion or medical treatment records, using only those parts that are favorable to a finding of nondisability. *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir.2004); *Lee v. Barnhart,* 117 Fed. Appx. 674, 678 n. 2 (10th Cir.2004). The ALJ cannot impermissibly ignore the evidence as a whole while choosing instead to abstract selective pieces of evidence favor-

able to their position. *See O'Connor v. Shalala,* 873 F.Supp. 1482, 1491 (D.Kan. 1995); *Jones v. Sullivan,* 804 F.Supp. 1398, 1406 (D.Kan.1992); *Claassen v. Heckler,* 600 F.Supp. 1507, 1511 (D.Kan. 1985).

■■■■ SSR 85–28 (Medical impairments that are not severe) states the following:

Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

1985 WL 56856 at *4. The step two requirement is generally considered a de minimis screening device to dispose of groundless claims; thus, reasonable doubts on severity are to be resolved in favor of the claimant. *Samuel v. Barnhart,* 295 F.Supp.2d 926, 952 (E.D.Wis.2003). Although the court may not properly weigh the evidence in the first instance, *Neil v. Apfel,* 156 F.3d 1244, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998), the court would note that given the de minimis showing of medical severity at step two, and the opinion of Dr. Schwartz that plaintiff has a perception of pain which would make it difficult for him to function on the job, plaintiff has presented evidence which would provide clear support for a finding that plaintiff has a severe mental or pain-related impairment in addition to the severe impairment found by the ALJ. Therefore, this case should be remanded in order for the ALJ to review the entire opinion of Dr. Schwartz before making a finding at step two of whether the plaintiff has a severe mental or pain-related impairment.

■ Also not mentioned by the ALJ in his decision were numerous GAF scores given by treating or examining professionals. They were as follows:

| date | GAF score [2] | |
|------|-----------|---|
| January 28, 2003 | 45 | (R. at 235) |
| January 29, 2003 | 25 current | |
| | 50 high in past year | (R. at 229) |
| February 7, 2003 | 50 | (R. at 162, 225) |
| January 13, 2004 | 55 | (R. at 243) |

The GAF scores for 2003 were from treatment providers, and the 2004 GAF score was given by Dr. Schwartz, a consultative examiner. Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work. A claimant's impairment might lie solely with the social, rather than the occupational sphere. A GAF score of fifty or less, however, does suggest an inability to keep a job. For this reason, such a GAF score should not be ignored. *Lee v. Barnhart,* 117 Fed. Appx. 674, 678 (10th Cir.2004). Therefore, on remand, the ALJ should also consider the GAF scores in determining whether plaintiff has a severe mental impairment at step two.

Finally, the ALJ found that the record did not show "any significant level of deficiencies of concentration, persistence or pace" (R. at 20). However, one of plaintiff's treatment notes, from February 5, 2003, noted "poor memory & concentration" (R. at 183). On remand, the ALJ should also take this and other treatment records into consideration when making his determination of the severity of plaintiff's mental impairment.

## II. Did the ALJ err in his credibility analysis?

In his decision, the ALJ made the following statements as he analyzed plaintiff's credibility:

> Longitudinally, the claimant has not sought out or had aggressive medical treatment or surgical intervention for disabling pain; he has not sought out emergency treatment or any other treatment at the frequency expected that would be supportive of severe pain to the amount alleged. Failure to seek medical attention is inconsistent with complaints of disabling pain. *Benskin v. Bowen,* 830 F.2d 878 (8th Cir.1987). Neither does the evidence show that the claimant has been prescribed extensive pain medication. If the claimant were experiencing severe pain, it is reasonable to assume he would report this information to his doctor and his medication would be adjusted accordingly.

(R. at 15).

> One could reasonabl[y] expect the claimant to have sought out more aggressive treatment including treatment from the

**2.** GAF (global assessment of functioning) scores can be found in the *Diagnostic and Statistical Manual of Mental Disorders.* The scores in this case represent the following:

> 51–60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).
>
> 41–50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school**

functioning (e.g., no friends, unable to keep a job) (emphasis in original).

> 21–30: **Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment** (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) **OR inability to function in almost all areas** (e.g., stays in bed all day; no job, home, or friends).

*Diagnostic and Statistical Manual of Mental Disorders* (DSM–IV–TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

VA earlier if he was suffering symptomatology at the severity alleged. (R. at 18).

In summation, the record is supportive of a short course of treatment for depression in 2003 and was diagnosed with bipolar and failed to continue treatment. The claimant is found to be negligent for not following-up and continuing with his medication treatment and doctors appointments. I find that his residual symptomatology is readily remedial with treatment. Case law is quite explicit, failure to follow prescribed treatment is a factor that may be used to discredit a claimant's subjective allegations and I may determine that an impairment is reasonably remediable. *Stone v. Harris*, 657 F.2d 210 (8th Cir.1981); *Brown v. Heckler*, 767 F.2d 451, 453 n. 2 (8th Cir.1985).

(R. at 20).

 First, the ALJ clearly relied on the lack of treatment in finding plaintiff's allegations of pain and disabling impairments not fully credible. SSR 96–7p states the following:

On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility.

SSR 96–7p, 1996 WL 374186 at *7. A review of the transcript of the hearing in this case indicates that the plaintiff was never asked why he did not seek further medical treatment. Thus, the ALJ failed to comply with SSR 96–7p.

In addition, the medical/psychological records indicate the following:

As Bryan has very limited resources and no insurance, he relies on samples at this time.

(R. at 165, Feb. 10, 2003).

A lack of insurance complicates this as he has had trouble accessing health care.

(R. at 227, Feb. 7, 2003).

He has no current psychiatric treatment because of no money and no insurance.

(R. at 242, Jan. 13, 2004).

 The 10th Circuit, relying on the case of *Thompson v. Sullivan*, 987 F.2d 1482, 1489–90 (10th Cir.1993), has repeatedly held that the inability to pay may justify a claimant's failure to pursue or seek treatment. *Threet v. Barnhart*, 353 F.3d 1185, 1190 n. 7 (10th Cir.2003); *Norris v. Apfel*, 215 F.3d 1337 (table), 2000 WL 504882 at *8 (10th Cir. Apr. 28, 2000); *Smith v. Apfel*, 149 F.3d 1191 (table), 1998 WL 321176 at *4 (10th Cir. June 8, 1998); *Snead v. Callahan*, 129 F.3d 131 (table), 1997 WL 687660 at *4 (10th Cir. Oct. 31, 1997); *see also Eason v. Chater*, 951 F.Supp. 1556, 1562 (D.N.M.1996) (claimant should not be penalized for failing to seek treatment that they cannot afford); *Hockenhull v. Bowen*, 723 F.Supp. 555, 557 (D.Colo.1989) (evidence of nontreatment is of little weight when claimant's failure to seek medical treatment can be attributed

to their inability to pay for such treatment). Because of the failure of the ALJ to comply with SSR 96–7p or to consider the evidence in the record that plaintiff could not afford medical/psychological treatment, it was clear error for the ALJ to rely on the lack of treatment as a basis for discounting the credibility of plaintiff's allegations of pain and disabling impairments.

■■■■ Second, the ALJ made a finding that plaintiff's residual symptomatology is readily or reasonably remediable with treatment.[3] However, the ALJ failed to cite to any medical/psychological evidence to support this assertion. In the absence of any medical evidence to support this assertion by the ALJ, the ALJ overstepped his bounds into the province of medicine. *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir.1996). The ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. *Bolan v. Barnhart*, 212 F.Supp.2d 1248, 1262 (D.Kan.2002).

The ALJ also asserted that the lack of "aggressive" medical treatment, including surgical intervention, and the lack of "extensive" pain medication demonstrated that plaintiff's allegations of pain and disabling impairments are not fully credible. However, no medical opinion recommended such treatments. In the case of *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir.2004), the ALJ noted that the claimant did not require an assistive device for his neck. The court held that there is no evidence that any physician recommended such a device or suggested that one would have provided any pain relief. The court stated that an ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors. Again, the ALJ has overstepped his bound into the province of medicine and improperly rendered a medical judgment. Because of these errors by the ALJ, this case shall be remanded so that a proper credibility determination can be made.

## III. Did the ALJ err in his RFC findings?

■■■■ According to SSR 96–8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96–8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); *Sullivan v. Zebley*, 493 U.S. 521, 530 n. 9, 110 S.Ct. 885, 891 n. 9, 107 L.Ed.2d 967 (1990); *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir.1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. *See Southard v. Barnhart*, 72 Fed. Appx. 781, 784–785 (10th Cir.2003). The ALJ's decision must be sufficiently articu-

---

**3.** The court has reviewed the two 8th Circuit cases cited by the ALJ in his decision on this point (*Stone* and *Brown* ), and finds that they do not support the ALJ's assertion that the ALJ may determine that an impairment is reasonably remediable. In fact, the *Stone* opinion expressly states that "the agency is certainly not entitled to presumptions that obesity is remediable." 657 F.2d at 212.

lated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. *Spicer v. Barnhart,* 64 Fed.Appx. 173, 177–178 (10th Cir.2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. *Cruse v. U.S. Dept. of Health & Human Services,* 49 F.3d 614, 618 (10th Cir.1995). When the ALJ has failed to comply with SSR 96–8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. *Brown v. Commissioner of the Social Security Administration,* 245 F.Supp.2d 1175, 1187 (D.Kan.2003).

■■■ The ALJ, in setting forth his RFC findings, provided no explanation of the basis for his findings, other than to state that he found plaintiff had more limitations than those found by the state agency consultants (R. at 20). The ALJ summarized the medical evidence, and then made his RFC findings. The ALJ provided no narrative discussion of how the evidence supported his RFC findings. In the case of *Kency v. Barnhart,* Case No. 03–1190–MLB (D.Kan. Nov. 16, 2004), the court held as follows:

> ... the ALJ simply listed all the evidence contained in the record and then set forth his conclusion without explaining the inconsistencies and ambiguities contained in the opinions. He did not connect the dots, so to speak, as is required by S.S.R. 96–8p. It may well be that upon remand, the ALJ will reach the same conclusion. Nevertheless, S.S.R. 96–8p is defendant's requirement and ALJs presumably are the experts whose responsibility it is to know and follow defendant's requirements ...

Most important, the ALJ must explain how the decision was reached. When an ALJ merely summarizes the facts, notes that he has considered all of the facts, and then announces his decision, there is nothing for the court to review. The court cannot know how the ALJ analyzed the evidence. When the evidence is contradictory or ambiguous, as it is in most cases, the court cannot know which evidence was given what weight, or how the ambiguities were resolved. Therefore, to determine whether substantial evidence supports the conclusion, the court would have to reweigh the evidence. Since that option is precluded by law, the court can only remand to the defendant for a proper explanation of how the evidence was weighed and ambiguities resolved.

*Kency,* (D.Kan. Nov. 16, 2004, Doc. 21 at 7, 9); *see also Wolfe v. Barnhart,* Case No. 05–1028–JTM (Doc. 25 at 3, July 25, 2006) ("It is insufficient for the ALJ to generally discuss the evidence but fail to relate the evidence to his conclusions").

In the case of *Howard v. Barnhart,* 379 F.3d 945, 947–948 (10th Cir.2004), the court stated that the lack of analysis accompanying the ALJ's RFC determination was troubling, noting that they had urged ALJs previously to include reasoning in their decisions to make appellate review not only possible but meaningful. The court went on to find that none of the medical evidence conflicted with the ALJ's conclusion that the claimant could perform light work, and stated that when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened. The court further found that claimant's testimony about her daily activities and limitations does not suggest that she could not perform light work, and thus concluded that substantial evidence supported the ALJ's RFC determination.

Because this case is being remanded for other reasons, as set forth above, on remand, the court will also require the ALJ to comply with the requirements of SSR 96–8p. Furthermore, Dr. Schwartz's belief that plaintiff has a perception of pain which would make it difficult for him to function on the job could be seen as conflicting with the RFC findings of the ALJ. However, as noted above, this opinion by Dr. Schwartz was never discussed by the ALJ. This opinion must be taken into consideration when making RFC findings.

Finally, the court is quite troubled at the lack of any medical evidence regarding plaintiff's physical RFC from any source, including treating physicians, consultative examining physicians, or a medical expert who reviewed the record and testified at the hearing. The only RFC assessment in the record is an opinion by Dr. Legler that plaintiff has no RFC limitations, an opinion rejected by the ALJ (R. at 20, 260).[4] In the case of *Fleetwood v. Barnhart,* 211 Fed.Appx. 736, 739–740 (10th Cir.2007), the ALJ relied on a state agency medical consultant who filled out a check-the-box evaluation form, which, standing alone, the court found did not constitute substantial evidence. The court stated that no other medical evidence in the record specifically addressed her ability to work. The court held as follows:

> To the extent there is very little medical evidence directly addressing Ms. Fleetwood's RFC, the ALJ made unsupported findings concerning her functional abilities. Without evidence to support his findings, the ALJ was not in a position to make an RFC determination.

The ALJ's inability to make proper RFC "findings may have sprung from his failure to develop a sufficient record on which those findings could be based." *Washington v. Shalala,* 37 F.3d 1437, 1442 (10th Cir.1994). The ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Soc. Sec. R. 96–8p, 1996 WL 374184, at \*5. Because the disability hearing is nonadversarial, an ALJ is obligated to develop the record even where, as here, the claimant is represented by counsel. *Thompson v. Sullivan,* 987 F.2d 1482, 1492 (10th Cir. 1993); accord *Hawkins v. Chater,* 113 F.3d 1162, 1164, 1168 (10th Cir.1997). Even though Ms. Fleetwood's counsel did not request any additional record development, the need for additional evidence is so clearly established in this record that the ALJ was obliged to obtain more evidence regarding her functional limitations. *See Hawkins,* 113 F.3d at 1167–68.

*Fleetwood,* 211 Fed.Appx. at 740–741.

The facts of this case closely mirror the factual record in *Fleetwood.* For this reason, on remand, the ALJ shall either obtain a consultative examination, 20 C.F.R. § 404.1519a, including a statement from the examiner setting forth what plaintiff can still do despite his impairments, 20 C.F.R. § 404.1519n(c)(6), recontact treating sources in order to request their opinions regarding plaintiff's RFC, 20 C.F.R. § 404.1512(e), and/or have a medical expert testify at the hearing regarding plaintiff's physical RFC in light of the evidence of record.[5]

---

**4.** Although not clear from the record, the short one page hand-written document by Dr. Legler appears to be a report from a state agency consultant. There is no evidence that Dr. Legler treated or examined the plaintiff.

**5.** The U.S. Supreme Court has considered the use of medical advisors at administrative hearings and approved of the concept. *Richardson v. Perales,* 402 U.S. 389, 408, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Such opinions are competent evidence and in appropriate

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on January 9, 2007.

See also 282 Kan. 9, 138 P.3d 755.

circumstances may constitute substantial evidence supporting the ALJ's decision. *Lopez v. Apfel,* 1997 WL 758831 at *2 (10th Cir. Dec. 9, 1997) (ALJ properly relied on opinions of medical advisor and consulting physicians who disagreed with treating physician on issue of disability); *Torres v. Secretary of HHS,* 870 F.2d 742, 744 (1st Cir.1989) (the testimony of a medical advisor who reviews the record, testifies and is subject to cross-examination may constitute substantial evidence depending on the circumstances, including the nature of the illness and the information provided to the advisor).